# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| HAROLD FAVERMAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENWORTH FINANCIAL, INC., WILLIAM H. BOLINDER, G. KENT CONRAD, MELINA E. HIGGINS, THOMAS J. MCINERNEY, DAVID M. MOFFETT, THOMAS E. MOLONEY, JAMES A. PARKE, JAMES S. RIEPE, ASIA PACIFIC GLOBAL CAPITAL CO., LTD. and ASIA PACIFIC GLOBAL CAPITAL USA CORPORATION,<br><br>Defendants. | Civil Action No. **3:16CV883**<br><br><br>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Harold Faverman, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel, as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.   This is a shareholder class action brought by Plaintiff on behalf of holders of the common stock of Genworth Financial, Inc. ("Genworth" or the "Company") against the Board of Directors of Genworth ("Individual Defendants" or "Board") to enjoin the acquisition ("Proposed Transaction") of the publicly owned shares of Genworth common stock by Asia Pacific Global Capital Co., Ltd. ("Asia Pacific" or "Parent"), through its wholly owned subsidiary Asia Pacific Global Capital USA Corporation ("Merger Sub").

2. On October 23, 2016, Genworth and China Oceanwide Holdings Group Co., Ltd. ("China Oceanwide," defined as "Parent General Holding Company" in the Merger Agreement) jointly announced that they had entered into a definitive agreement ("Merger Agreement") pursuant to which Asia Pacific will acquire the common stock of Genworth for $5.43 per share in cash ("Proposed Consideration"), for a total transaction value of approximately $2.7 billion (the "Merger"). Upon the completion of the Proposed Transaction, Genworth will be a standalone subsidiary of China Oceanwide and Genworth's senior management team will continue to lead the business from its current headquarters in Richmond, Virginia.

3. As part of the transaction, China Oceanwide has additionally committed to contribute to Genworth $600 million of cash to address the debt maturing in 2018, on or before its maturity, as well as $525 million of cash to the U.S. life insurance businesses. This contribution is in addition to $175 million of cash previously committed by Genworth Holdings, Inc. to the U.S. life insurance businesses.

4. The Proposed Transaction was the result of a flawed process and is woefully inadequate in light of Genworth's true value and its growth prospects.

5. The proposed consideration represents a small 4.2% premium to Genworth's closing price of $5.21 on October 21, 2016, the last trading day before the announcement of the Proposed Transaction.

6. Genworth's true value and its growth prospects are evidenced by the Company's positive financial results and earnings surprises in each of its recent quarters. According to Yahoo! Finance, the Company's reported earnings exceeded analyst estimates by *50%* in the quarter ended March 30, 2016. Likewise, in the quarter ended June 29, 2016, the Company's reported earnings exceeded analyst estimates by *19%*.

7. According to Yahoo! Finance, the Company's earnings are expected to grow **69.2%** this quarter and **223.5%** next quarter, compared to an expected contraction for the Company's industry of -0.91% for each of those periods. Moreover, for the current year, the Company's earnings are expected to grow **74.5%**, compared to zero growth for the Company's industry.

8. In facilitating the acquisition of Genworth by Asia Pacific for inadequate consideration, each of the Defendants (defined below) breached and/or aided the other Defendants' breaches of their fiduciary duties.

9. The Board exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or from continuing discussions and negotiations with potential acquirers; (ii) an "information rights" provision that grants Asia Pacific access to any rival bids, the material terms thereof, and the bidder's identity; (iii) a "matching rights" provision that provides Asia Pacific with five (5) business days to match any competing superior proposal; and (iv) a provision that requires Genworth to pay Asia Pacific a termination fee of $105 million following termination of the Merger Agreement under specified circumstances, including if the Board effects an change of recommendation in the event of a superior alternative proposal.

10. These provisions substantially and improperly prevent the third parties from making a superior proposal for the Company and impede the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Genworth.

11. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' (as defined herein) violations of their fiduciary duties and from Asia Pacific.

## JURISDICTION AND VENUE

12. Subject matter jurisdiction is founded upon diversity under 28 U.S.C. §1332(d)(2)(B), because the amount in controversy exceeds $5 million, exclusive of interest and costs, and this case is a class action in which at least one class member is a citizen or subject of a foreign state and at least one defendant is a citizen of a State.

13. The Court has personal jurisdiction over all Defendants, because all Defendants are either citizens of the Commonwealth of Virginia, or have sufficient minimum contacts with the Commonwealth of Virginia.

14. Venue is proper under 28 U.S.C. §1391(b)(2) because Genworth maintains offices in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

15. Plaintiff is, and at all relevant times was, a continuous stockholder of Genworth. Plaintiff is a citizen of Israel.

16. Genworth is a Delaware corporation with its principal executive offices located at 6620 West Broad Street, Richmond, VA 23230.

17. Defendant William H. Bolinder has served as a Director of the Company since October 2010. Upon information and belief, Mr. Bolinder is a citizen of the State of Maine.

18. Defendant G. Kent Conrad has served as a Director of the Company since 2013.

4

Upon information and belief, Mr. Conrad is a citizen of the State of North Dakota.

19.     Defendant Melina E. Higgins has served as a Director of the Company since 2013. Upon information and belief, Ms. Higgins is a citizen of the State of Pennsylvania.

20.     Defendant Thomas J. McInerney has served as President, Chief Executive Officer and as a Director of the Company since 2013. Upon information and belief, Mr. McInerney is a citizen of the State of Virginia.

21.     Defendant David M. Moffett has served as a Director of the Company since 2012. Upon information and belief, Mr. Moffett is a citizen of the State of California.

22.     Defendant Thomas E. Moloney has served as a Director of the Company since 2009. Upon information and belief, Mr. Moloney is a citizen of the State of Massachusetts.

23.     Defendant James A. Parke has served as a Director of the Company since 2004. Upon information and belief, Mr. Parke is a citizen of the State of Connecticut.

24.     Defendant James S. Riepe has served as a Director of the Company since 2006 as well as Non-Executive Chairman of the Board since 2012. Upon information and belief, Mr. Riepe is a citizen of the State of Virginia.

25.     Defendants Bolinder, Conrad, Higgins, McInerney, Moffett, Moloney, Parke, and Riepe are collectively referred to herein as the "Board" or the "Individual Defendants."

26.     Defendant Asia Pacific is a liability company incorporated in the People's Republic of China.

27.     Defendant Merger Sub is a Delaware corporation.

28.     Collectively, Genworth, the Individual Defendants, Asia Pacific and Merger Sub are referred to herein as the "Defendants."

## **CLASS ACTION ALLEGATIONS**

29. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Genworth common stock who are being and will be harmed by Defendants' actions described below ("Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

30. This action is properly maintainable as a class action because:

    a. The Class is so numerous that joinder of all members is impracticable. As of November 1, 2016, there were approximately 498 million shares of Genworth common stock issued and outstanding. The actual number of public shareholders of Genworth will be ascertained through discovery.

    b. There are questions of law and fact that are common to the Class, including:

        i) whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

        ii) whether the Individual Defendants have breached their fiduciary duty to obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

        iii) whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

      c.    Plaintiff is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

      d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

      e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

      f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.**    **Company Background**

31.    Genworth (NYSE: GNW) is a Fortune 500 insurance holding company committed to helping families achieve the dream of homeownership and address the financial challenges of aging through its leadership positions in mortgage insurance ("MI") and long term care insurance ("LTC"). Headquartered in Richmond, Virginia, Genworth traces its roots back to 1871 and became a public company in 2004.

32.    On October 21, 2016, the last trading day before the announcement of the Proposed Transaction, Genworth closed at a price of $5.21 per share.

33.    According to Yahoo! Finance, the Company's reported earnings exceeded analyst estimates by *50%* in the quarter ended March 30, 2016. Likewise, in the quarter ended June 29,

2016, the Company's reported earnings exceeded analyst estimates by *19%*.

34. Before the announcement of the Proposed Transaction, Genworth stock had increased approximately 22% from the start of the year and the Company had reported consistently growing earnings, which beat analysts' estimates for at least four consecutive quarters.

B.     **The Proposed Transaction**

35. On October 23, 2016, Genworth and China Oceanwide issued a press release announcing the Proposed Transaction:

> China Oceanwide Holdings Group Co., Ltd. ("China Oceanwide") and Genworth Financial, Inc. (NYSE: GNW) ("Genworth") today announced that they have entered into a definitive agreement under which China Oceanwide has agreed to acquire all of the outstanding shares of Genworth for a total transaction value of approximately $2.7 billion, or $5.43 per share in cash. The acquisition will be completed through Asia Pacific Global Capital Co. Ltd., one of China Oceanwide's investment platforms. The transaction is subject to approval by Genworth's stockholders as well as other closing conditions, including the receipt of required regulatory approvals.
>
> As part of the transaction, China Oceanwide has additionally committed to contribute to Genworth $600 million of cash to address the debt maturing in 2018, on or before its maturity, as well as $525 million of cash to the U.S. life insurance businesses. This contribution is in addition to $175 million of cash previously committed by Genworth Holdings, Inc. to the U.S. life insurance businesses. Separately, Genworth also announced today preliminary charges unrelated to this transaction of $535 to $625 million after-tax associated with long term care insurance (LTC) claim reserves and taxes. Those items are detailed in a separate press release. The China Oceanwide transaction is expected to mitigate the negative impact of these charges on Genworth's financial flexibility and facilitate its ability to complete its previously announced U.S. life insurance restructuring plan. Genworth believes this transaction is the best strategic alternative to maximize stockholder value.
>
> James Riepe, non-executive chairman of the Genworth Board of Directors said, "The China Oceanwide transaction is the result of an active and extensive review process conducted over the past two years under the supervision of the Board and with guidance from external financial and legal advisors. The Board is confident that the sale of the company to China Oceanwide is the best path forward for Genworth's stockholders."

Upon the completion of the transaction, Genworth will be a standalone subsidiary of China Oceanwide and Genworth's senior management team will continue to lead the business from its current headquarters in Richmond, Virginia. Genworth intends to maintain its existing portfolio of businesses, including its MI businesses in Australia and Canada. Genworth's day-to-day operations are not expected to change as a result of this transaction.

China Oceanwide is a privately held, family owned international financial holding group founded by Mr. Lu Zhiqiang. Headquartered in Beijing, China, China Oceanwide's well-established and diversified businesses include operations in financial services, energy, culture and media, and real estate assets globally, including in the United States. Businesses controlled by China Oceanwide have more than 10,000 employees globally.

"Genworth is an established leader in both mortgage insurance and long term care insurance, which are markets that present significant long-term growth opportunities," added Mr. Lu, Chairman of China Oceanwide. "We are impressed by Genworth's purpose and its focus on helping people manage the financial challenges of aging as well as achieving the dream of homeownership. In acquiring Genworth and contributing $1.1 billion of additional capital, we are providing crucial financial support to Genworth's efforts to restructure its U.S. life insurance businesses by unstacking Genworth Life and Annuity Insurance Company (GLAIC) from under Genworth Life Insurance Company (GLIC) and address its 2018 debt maturity. In order to close the transaction and achieve these objectives, we have structured the transaction with the intention of increasing the likelihood of obtaining regulatory approval."

Tom McInerney, President & Chief Executive Officer of Genworth concluded, "We believe that this transaction creates greater and more certain stockholder value than our current business plan or other strategic alternatives, and is in the best interests of Genworth's stockholders. China Oceanwide is an ideal owner for Genworth going forward. They recognize the strength of our mortgage insurance platform and the importance of long term care insurance in addressing an aging population. The capital commitment from China Oceanwide will strengthen our business and increase the likelihood of obtaining regulatory approval."

Genworth will continue to focus on its key financial priorities, including strengthening the balance sheet and stabilizing and improving ratings over time, particularly in its U.S. MI business. Genworth will also continue to focus on its key operational priorities, most notably executing its multi-year LTC rate action plan, which is essential to stabilizing the financial position of the legacy LTC business. China Oceanwide has no current intention or future obligation to contribute additional capital to support Genworth's legacy LTC business.

The transaction, which has been approved by both companies' boards of directors, is expected to close by the middle of 2017, subject to the requisite approval by

Genworth's stockholders as well as certain other closing conditions, including the receipt of regulatory approvals. Both China Oceanwide and Genworth have initiated discussions with regulators in key jurisdictions.

Goldman, Sachs & Co. and Lazard are acting as financial advisors to Genworth. Willkie, Farr & Gallagher LLP and Weil, Gotshal & Manges LLP are acting as legal advisors to Genworth, and Richards, Layton & Finger is acting as legal advisor to the Genworth Board of Directors. Citi and Willis Capital Markets & Advisory are acting as financial advisors to China Oceanwide and Sullivan & Cromwell and Potter Anderson & Corroon LLP are acting as legal advisors to China Oceanwide.

**D.  The Unfair Price**

36. Pursuant to the Merger Agreement, Asia Pacific will acquire the common stock of Genworth for $5.43 per share in cash, for a total transaction value of approximately $2.7 billion. The Proposed Consideration is woefully inadequate in light of Genworth's true value and its growth prospects.

37. The proposed consideration represents a small 4.2% premium to Genworth's closing price of $5.21 on October 21, 2016, the last trading day before the announcement of the Proposed Transaction.

38. Genworth's true value and its growth prospects are evidenced by the Company's positive financial results and earnings surprises in each of its recent quarters. As explained above, the Company's reported earnings exceeded analyst estimates by *50%* in the quarter ended March 30, 2016. Likewise, in the quarter ended June 29, 2016, the Company's reported earnings exceeded analyst estimates by *19%*.

39. Further, according to Yahoo! Finance, the Company's earnings are expected to grow *69.2%* this quarter and *223.5%* next quarter, compared to an expected contraction for the Company's industry of -0.91% for each of those periods. Moreover, for the current year, the

10

Company's earnings are expected to grow **74.5%**, compared to zero growth for the Company's industry.

40. As these indicators make clear, Genworth, if properly exposed to the market for corporate control, would bring a price materially in excess of the amount offered in the Proposed Transaction.

E. **The Preclusive Deal Protection Measures**

41. As part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

42. The Merger Agreement contains a strict "no solicitation" provision. Pursuant to §6.2 of the Merger Agreement, Genworth may not solicit, initiate, endorse, knowingly encourage or knowingly facilitate alternative acquisition proposals with other potential acquirers for the Company. Specifically, §6.2(a) provides:

> The Company agrees that, except as expressly permitted by this Section 6.2, neither it nor any of its Subsidiaries nor any of the officers and directors of it and its Subsidiaries shall, and the Company shall use its reasonable best efforts to cause its and its Subsidiaries' employees, investment bankers, attorneys, accountants and other advisors or representatives (such directors, officers, employees, investment bankers, attorneys, accountants and other advisors or representatives, collectively, "**Representatives**") not to, directly or indirectly, nor shall it authorize any of the officers and directors of it or its Subsidiaries to (subject to the terms of the provisos in the definition of "Subsidiary" in Article X):
>
> (i) initiate, solicit or knowingly encourage any inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, any Acquisition Proposal;
>
> (ii) engage in or otherwise participate in any discussions or negotiations regarding an Acquisition Proposal, or provide any non-public information or data to any Person that has made, or to the Knowledge of the Company is reasonably likely to make or is considering (in each case whether alone or as part of a group), an Acquisition Proposal, except to notify such Person of the existence of the provisions of this Section 6.2;

11

>>(iii) take any action to exempt any Third Party from the restrictions on "business combinations" contained in Section 203 of the DGCL or any other applicable Takeover Statute or otherwise cause such restrictions not to apply; or

>>(iv) otherwise knowingly facilitate any effort or attempt to make an Acquisition Proposal;

>provided, that notwithstanding the foregoing or anything else in this Agreement to the contrary, the Company may waive, and may choose not to enforce, any provision of any standstill or confidentiality agreement with any Person that would prohibit such Person from communicating confidentially an Acquisition Proposal to the Company Board.

>Notwithstanding anything in this Agreement to the contrary, prior to but not after the time the Requisite Company Vote is obtained, the Company may, after complying with the notice obligation set forth in the first sentence of Section 6.2(g), (1) provide information and data in response to a request therefor by a Person who has made an unsolicited written Acquisition Proposal that the Company Board reasonably believes to be credible if the Company receives from the Person so requesting such information or data an executed confidentiality agreement on terms relating to confidentiality not less restrictive to the other party than those contained in the Confidentiality Agreements (provided that, such executed confidentiality agreement need not prohibit the making, or amendment, of any Acquisition Proposal to the Company), and promptly discloses (and, if applicable, provides copies of) any such information and data to Parent to the extent not previously provided to Parent; or (2) engage in or otherwise participate in any discussions or negotiations with any Person who has made such an unsolicited written Acquisition Proposal, if and only to the extent that, prior to taking any action described in clause (1) or (2) above, the Company Board determined in good faith after consultation with its financial advisor and outside counsel, that such action is reasonably necessary in order for the Company's directors to comply with their fiduciary duties under applicable Law.

43. Pursuant to §6.2(g) of the Merger Agreement, the Company agreed that it will promptly (and, in any event, within 48 hours) notify Asia Pacific if any inquiries, proposals or offers with respect to a competing acquisition proposal (and any changes thereto) are received by, any information or data in connection with a competing proposal is requested from, or any discussions or negotiation in connection with a competing proposal are sought to be initiated or continued with, the Company or any of its representatives, "indicating, in connection with such notice, the name of such Person and the material terms and conditions of any proposals or offers

12

(including, if applicable, copies of any written requests, proposals or offers, including proposed agreements). Thereafter the Company will keep Asia Pacific reasonably informed, on a prompt basis, of the status and terms of any such proposals or offers (including any amendments thereto) and the status of any such discussions or negotiations, including any change in the Company's intentions as previously notified."

44. Additionally, before the Board may change its recommendation concerning the Proposed Transaction, the Merger Agreement provides Asia Pacific with information rights and recurring and unlimited matching rights, including: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) five (5) business days to negotiate with Asia Pacific to amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received. Moreover, if the competing proposal is modified in response to a matching/superior revised bid by Asia Pacific, Asia Pacific is entitled to a new notice and matching rights period of three (3) business days, and new notice and matching rights period of one (1) business day. Moreover, Section 6.3(c) requires the Company to notify Asia Pacific within 24 hours that it has received an inquiry, proposal or offer.

45. In other words, despite the inadequacy of the Proposed Consideration, the Merger Agreement gives Asia Pacific access to any rival bidder's information and allows Asia Pacific a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Asia Pacific and will allow Asia Pacific to piggy-back upon the due diligence of the foreclosed second bidder.

46. The Merger Agreement further provides that the Company must pay Asia Pacific a termination fee of $105 million following termination of the Merger Agreement under specified circumstances, including if Genworth enters into a transaction with a superior bidder and/or the Board changes its recommendation concerning the Proposed Transaction.

47. As such, any competing bidder will have to pay a substantial naked premium just to match the inadequate consideration proposed by Asia Pacific. Thus, the deal protection devices unreasonably deter an alternative bidder from making a superior proposal that will adequately compensate the Company's shareholders.

48. These preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company and otherwise dissuade the Board from fulfilling its fiduciary duties to Genworth shareholders. The circumstances under which third parties may submit an alternative proposal, or where the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal, are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

**FIRST CAUSE OF ACTION**

**(Against the Individual Defendants for Breach of Fiduciary Duties)**

49. Plaintiff repeats and realleges each allegation set forth herein.

50. The Individual Defendants have violated fiduciary duties owed to public shareholders of Genworth.

51. By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to obtain for the public shareholders of Genworth the highest value

available for Genworth in the marketplace.

52. As demonstrated by the allegations above, the Individual Defendants breached their fiduciary duties owed to the shareholders of Genworth because they failed to take steps to maximize the value of Genworth to its public shareholders in a change of control transaction.

53. As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the highest available value for their Genworth shares. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

54. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Individual Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### (Against Asia Pacific and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty)

55. Plaintiff repeats and realleges each allegation set forth herein.

56. Asia Pacific and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to the public shareholders of Genworth, and are participating in such breaches of fiduciary duties.

57. Asia Pacific and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, Asia Pacific and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the

Proposed Transaction in breach of their fiduciary duties.

58.   Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

A.   Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.   Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best available terms for shareholders;

C.   Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.   Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorney' and experts' fees; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 2, 2016

Of Counsel:
**BROWER PIVEN**
  **A Professional Corporation**
Brian C. Kerr
475 Park Avenue South, 33rd Floor
New York, NY 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
kerr@browerpiven.com

Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB 77791)
L. Kendall Satterfield
Rosalee B.C. Thomas
1077 30th Street NW, Suite 150
Washington, DC 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
rwilson@finkelsteinthompson.com
ksatterfield@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com

*Counsel for Plaintiff*